**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

REY CLEMENTE-VIZCARRONDO, et al.

    **Plaintiffs**

        v.

UNITED STATES OF AMERICA, et al.

    **Defendants**

**CIVIL NO.** 17-1144 (RAM)

## OPINION AND ORDER

RAÚL M. ARIAS-MARXUACH, District Judge

Pending before the court is federal Defendant's motion to exclude the testimony of Plaintiffs' expert witness, Dr. Pedro A. Murati, and his Independent Medical Evaluation of plaintiff Rey Clemente-Vizcarrondo. (Docket No. 22). Plaintiffs filed a response in opposition. (Docket No. 30). After reviewing the parties' arguments, the record and the applicable law, the Court hereby **GRANTS** in part and **DENIES** in part Defendant's motion to exclude the proffered expert testimony of Dr. Pedro A. Murati.

### I. BACKGROUND

On February 1, 2017, Rey Clemente-Vizcarrondo ("Mr. Clemente"), his wife Jacqueline Torres-Rosario, the conjugal partnership between them, and Jey Clemente-Torres (collectively, "Plaintiffs") filed an action for damages against the United States Department of Veterans Affairs ("VA Hospital" or "Defendant") pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b),

2671, *et seq* and Article 1802 of the Puerto Rico Civil Code, 31 L.P.R.A. § 5141. (Docket No. 1 at 1.). Plaintiffs claim that Mr. Clemente received negligent treatment at the VA Hospital after one of its physicians performed "right ankle surgery" but failed to provide any instructions or medications to avoid the formation of blood clots or other relevant complications. (Docket No. 1 ¶ 17-20). On June 30, 2017, Defendant filed an *Answer to Complaint* denying any acts of alleged negligence. (Docket No. 9 at 9-12).

Plaintiffs retained Dr. Pedro A. Murati ("Dr. Murati") as their expert witness to testify as to his Independent Medical Evaluation of Mr. Clemente and his findings. (Docket No. 20 at 28).

On June 10, 2019, Defendant moved to exclude Dr. Murati's expert witness testimony for failing to meet the requirements established by Fed. R. Evid. 702. (Docket No. 22 at 14). Specifically, Defendant alleges that: (1) Dr. Murati is not qualified to be an expert because he is a physiatrist instead of an internal medicine physician; (2) his report lacks any medical literature or data to support his findings; and (3) he does not identify the applicable medical standard of care or how the VA Hospital physicians deviated from it. Id. at 6-11.

Plaintiffs filed a *Response in Opposition to "Motion to Exclude Expert Testimony"* on July 23, 2019. (Docket No. 30). Therein, Plaintiffs assert that: (1) Dr. Murati does not need to

be an internal medicine physician to be a qualified expert in this case; and (2) experts can make an informed opinion based on their knowledge and training to identify the standard of care, without supporting said opinion with medical journals. Id. at 1-2. Lastly, Plaintiffs allege that Dr. Murati discussed the applicable standard of care in his deposition. Id. at 9-10.

## II. LEGAL STANDARD

**A. The Admissibility of Expert Witness Testimony**

Federal Rule of Evidence 702 governs the admissibility of expert witness testimony. Specifically, Fed. R. Evid. 702 establishes that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Pursuant to Rule 702, trial judges are tasked with "ensuring that an expert's testimony both rests on reliable foundation and is relevant to the task at hand." Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 597 (1993). When applying this rule, judges must assume the "role of gatekeepers to screen expert testimony

that although relevant, was based on unreliable scientific methodologies." González-Pérez v. Gómez- Águila, 296 F.Supp.2d 110, 113 (D.P.R. 2003) (citing Daubert, 509 U.S. at 597) ("Pertinent evidence based on scientifically valid principles will satisfy those demands.")

When assessing the reliability of expert testimony, trial courts can consider the following factors discussed in Daubert: (1) whether the expert's theory or technique is generally accepted as reliable in the scientific community; (2) whether the theory or technique in question can be, and has been, tested; (3) whether the theory or technique has been subjected to peer review and publication; and (4) the known or potential rate of error of the theory or technique. Daubert, 509 U.S. at 588-594.

In the performance of their gatekeeping function, judges must focus "solely on principles and methodology, not on the conclusions that they generate." Daubert, 509 U.S. at 595. Although certainly conclusions and methodology are not entirely distinct from one another, "**a court may conclude that there is simply too great an analytical gap between the data and the opinion proffered**." Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997) (emphasis added). In other words, under Daubert, an expert cannot merely state their qualifications, conclusions and assurances of reliability. *See* Daubert v. Merrell Dow Pharm., Inc., 43 F.3d 1311, 1319 (9th Cir. 1995). "Moreover, if a witness is relying mainly on experience, he

must provide more information for the Court to determine the reliability of his testimony." Santa Cruz-Bacardi v. Metro Pavia Hosp., Inc., 2019 WL 3403367, at *2 (D.P.R. 2019).

Thus, to ensure reliability and intellectual rigor, experts "must be able to produce a written report or testimony supported by an accepted methodology that is based on substantial scientific, technical, or other specialized knowledge." Figueroa v. Simplicity Plan de Puerto Rico, 267 F. Supp. 2d 161, 164 (D.P.R. 2003). "**Failure to provide a testimony or a report detailing the basis for the expert's opinion in a comprehensive scientific manner can cause the expert witness and his report to be eliminated from trial**." Id. (citing Justo Arenas & Carol M. Romey, Professional Judgment Standard and Losing Games for Psychology, Experts and the Courts, 68 Rev. Jur. U.P.R. 159, 180 (1999)) (emphasis added).

In order to be admissible, expert reports must also comply with Federal Rule of Civil Procedure 26(a)(2)(B). Fed. R. Civ. P. 26(a)(2)(B) requires that expert reports contain the following information:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
>
> (ii) the facts or data considered by the witness in forming them;
>
> (iii) any exhibits that will be used to summarize or support them;
>
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;

> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
>
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

These requirements make it clear that Rule 26(a)(2)(B) "call[s] for parties to make explicit and detailed expert disclosures." Santiago-Diaz v. Laboratorio Clinico Y De Referencia Del Este And Sara Lopez, M.D., 456 F.3d 272, 276 (1st Cir. 2006) Thus, "expert-related disclosures are insufficient when they consist of 'sketchy and vague descriptions of anticipated opinions or areas of anticipated testimony.'" Rivera-Marrero v. Presbyterian Cmty. Hosp., 255 F. Supp. 3d 290, 296–97 (D.P.R. 2017) (quoting Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc., 73 F.3d 546 (5th Cir. 1996)). *See also* Romero v. Drummond Co., Inc., 552 F.3d 1303 (11th Cir. 2008) (The District Court did not abuse its discretion when excluding experts whose reports consisted of single paragraphs that merely recited the general subject matter of their expected testimony and lacked any of the substance required by Rule 26(a)(2)(B)).

In accordance with these requirements, Fed. R. Civ. P. Rule 26(e)(2) dictates that parties have a duty to supplement an expert's report by the time pretrial disclosure are due. The duty to supplement applies to "[c]hanges in the opinions expressed by the expert whether in the report or at a subsequent deposition."

Fed. R. Civ. P. 26(a) advisory committee's notes.

### B. Which Physicians are Qualified to Testify as Experts

When analyzing the admissibility of an expert witness, the trial court must first resolve "whether the putative expert is qualified by knowledge, skill, experience, training, or education," to offer testimony. Mitchell v. United States, 141 F.3d 8, 14 (1st Cir. 1998) (citation omitted). The First Circuit has reiterated that an expert physician does not need to be "a specialist in a particular medical discipline to render expert testimony relating to that discipline." Gaydar v. Sociedad Instituto Gineco-Quirurgico y Planificacion, 345 F.3d 15, 24 (1st Cir. 2003). *See also* Pages-Ramirez v. Ramirez-Gonzalez, 605 F.3d 109, 114 (1st Cir. 2010). Although credentials such as board certification in a medical specialty are relevant when considering the weight and probative value of expert witness testimony, they are not necessary for its admissibility. *See* Pages-Ramirez, 605 F.3d at 114. "The fact that the physician is not a specialist in the field in which he is giving his opinion **affects not the admissibility of his opinion but the weight the jury may place on it**." Payton v. Abbott Labs, 780 F.2d 147, 155 (1st Cir. 1985)(emphasis added).

Furthermore, excluding testimony "that would otherwise 'assist the trier better to understand a fact in issue' simply because the expert does not have the specialization that the court

considers most appropriate" is considered an abuse of the court's discretion. Pages-Ramirez, 605 F.3d at 114. *See also* Gaydar, 345 F.3d at 24-25 ("[I]t would have been an abuse of discretion for the court to exclude Dr. Rodriguez's testimony on the sole basis that his medical specialty was something other than gynecology or obstetrics.")

**C. Evidence in medical malpractice cases**

In medical malpractice cases under Puerto Rico law, plaintiffs must establish three main elements: "(1) the duty owed (i.e., the minimum standard of professional knowledge and skill required in the relevant circumstances); (2) an act or omission transgressing that duty; and (3) a sufficient causal nexus between the breach and the harm." Laureano Quinones v. Nadal Carrion, 2018 WL 4057264, at *2- 3 (D.P.R. 2018) (quoting Marcano Rivera v. Turabo Medical Ctr. P'ship, 415 F.3d 162, 167 (1st Cir. 2005)).

In these cases, physicians must comply with the national standard of care. *See* Cortes-Irizarry v. Corporacion Insular De Seguros, 111 F.3d 184, 190 (1st Cir. 1997). In other words, a physician's duty is to provide patients with medical care "that, in the light of the modern means of communication and education, meets the requirements generally recognized by the medical profession." Ramirez-Ortiz v. Corporacion Del Centro Cardiovascular de Puerto Rico y Del Caribe, 32 F. Supp. 3d 83, 87 (D.P.R. 2014) (quoting Santiago-Otero v. Mendez, 135 D.P.R. 540,

1994 P.R.-Eng. 909, 224 (1994)). Notably, "experts must prove that a standard of care is nationally used, rather than simply explaining a standard as based on their experience." Santa Cruz-Bacardi, 2019 WL 3403367, at *5. This can be achieved by referencing "a published standard, [discussion] of the described course of treatment with practitioners outside the District ... at seminars or conventions, or through presentation of relevant data." Strickland v. Pinder, 899 A.2d 770, 773-74 (D.C. 2006) (internal citations omitted).

Moreover, health-care providers are "presumed to have exercised reasonable care in the discharge of [their] functions." Lopez-Rivera v. Hosp. Auxilio Mutuo, Inc., 290 F. Supp. 3d 137, 142 (D.P.R. 2017) (internal quotations omitted). Therefore, plaintiffs bear the burden of refuting said presumption. Given that "medical knowledge and training are critical to demonstrating the parameters of a physician's duty, **the minimum standard of acceptable care [...] must ordinarily be established by expert testimony**." Rolon-Alvarado v. Municipality of San Juan, 1 F.3d 74, 78 (1st Cir. 1993)(emphasis added). Only in medical malpractice suits "where the lack of care has been found to be so evident as to infer negligence" is other evidence "aside from expert testimony" sufficient to establish negligence. Laureano Quinones, 2018 WL 4057264, at *3 (internal quotations omitted).

**III. ANALYSIS**

Prior to considering the content of Dr. Murati's testimony, the Court must first determine if he is qualified to testify as an expert. According to his curriculum vitae, Dr. Murati is board certified in rehabilitation and physical medicine. (Docket No. 22-1 at 2). The First Circuit has clearly established that physicians do not need to be specialists in a certain field to be qualified experts. *See* Gaydar*,* 345 F.3d at 24. In any case, an expert physician's area of expertise would only affect the *weight* of their opinion, not its *admissibility*. *See* Payton, 780 F.2d at 155. *See also* Mitchell, 141 F.3d at 15 (holding that an internist with specialties in hematology and oncology, could testify as to physicians' treatment of colonoscopy patient in wrongful death suit, even though he was not a specialist in gastroenterology). Therefore, contrary to Defendant's allegations, Dr. Murati is qualified to testify in the present medical malpractice case despite being a physiatrist and not an internal medicine specialist.

Despite being qualified, for Dr. Murati's testimony to be *admissible*, it must be both reliable and relevant. Reliability in this context requires that the testimony be based on sufficient data and/or facts and is the product of trustworthy principles. For the testimony to be considered relevant, it must help the trier of fact to understand the evidence or determine a fact of

consequence in issue.

Dr. Murati's report begins by summarizing Mr. Clemente's account of his medical treatment, complaints and medical records. (Docket No. 22 at 2-4). Afterwards, Dr. Murati provides his physical examination of Mr. Clemente, as well as his subsequent impressions and recommendations as to Mr. Clemente's condition. Id. at 5-7. Specifically, Plaintiffs' proffered expert concludes that:

> This examinee's current diagnoses are within all reasonable medical probability a direct result from the right ankle surgery that occurred on 02-06-15, for which extended immobility was recommended without prophylaxis for [deep vein thrombosis] DVT in a [sic] examinee whose risk for DVT was present secondary to the procedure performed, the extended recommended immobility of 8 weeks and the examinee's pre-existing obesity. Id.

Dr. Murati does not provide any medical literature or data to support this conclusory opinion beyond his own examination of Mr. Clemente and his medical record. Plaintiffs contend that he was not required to do so. **In his deposition, Dr. Murati stated that he did not do any research to arrive to his conclusion nor did he review any publications or authorities**. (Docket No. 22-3 at 20). If an expert witness is "relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Hendrix ex rel. G.P. v. Evenflo Co., 609 F.3d 1183, 1201

(11th Cir. 2010) (quoting Committee Note on Fed. R. Evid. 702) (emphasis added). When a proffered expert physician's report lacks any medical literature, data, or even a more basic explanation of how their conclusion was reached, as is the case here, said report is inherently unreliable. "The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'" Id. Thus, given the report's lack of support for Dr. Murati's proffered opinion on the standard of care, this Court must conclude that there is "simply too great an analytical gap between the data and the opinion proffered." Gen. Elec. Co., 522 U.S. at 146.

In addition to being unreliable, Dr. Murati's report does not explain, or even define, deep vein thrombosis, why Mr. Celemente was at risk for developing this condition, how his right ankle surgery could have caused it, how it could have been avoided, or why prophylaxis would have been proper for a patient like Mr. Clemente. Thus, in addition to being unreliable, it would also be unhelpful to the trier of fact.

Lastly, in their *Response in Opposition*, Plaintiffs provide excerpts of Dr. Murati's deposition in which he allegedly indicated the applicable standard of care. (Docket No. 30 at 9-10). Essentially, in his deposition, Dr. Murati testified that it is "general medical knowledge" that "if you immobilize a leg after surgery" you should provide anticoagulation to avoid thrombosis, especially if the person is high risk. (Docket Nos. 30 at 9; 30-1

at 2-3). However, when explicitly asked what was the standard of care that VA Hospital personnel deviated from, Dr. Murati responded "**I cannot give you a specific quotation for standard of care at this moment.**" (Docket No. 22-3 at 20). Likewise, Dr. Murati did not provide any specific source from which a standard of care could be identified.

Both First Circuit and District Court case law provides that an expert witness may sometimes imply a standard of care in their testimony without articulating the "magic words." *See* Cortes-Irizarry v. Corporacion Insular De Seguros, 111 F.3d 184, 190 (1st Cir. 1997) (holding that references to a "prevailing medical standard" used by the "average gynecologist" was sufficient to establish a standard of care). In this case, Dr. Murati specifically states in his Deposition that he cannot provide the standard of care. However, even if Dr. Murati's deposition testimony would have clearly stated the national standard of care, this would not suffice to supplement Dr. Murati's expert report. Plaintiffs would have been obligated to supplement their proffered expert **report** to reflect the content of the subsequent deposition pursuant to Fed. R. Civ. P. 26(a). *See* Ciomber v. Coop. Plus, Inc., 527 F.3d 635, 642 (7th Cir. 2008) (holding that "Rule 26(a)(2) does not allow parties to cure deficient expert reports by supplementing them with later deposition testimony" because doing so would "completely undermin[e]" the purpose of expert reports).

## IV. CONCLUSION

The Court finds that Dr. Pedro A. Murati is qualified to be an expert. However, the portions of his report and proffered testimony as to the causation of Mr. Clemente's diagnoses, negligence and medical malpractice do not fulfill the requirements of Fed. R. Evid. 702 and the applicable case law. Wherefore, Defendant's *Motion to Exclude Expert Testimony* at Docket No. 22 is hereby **GRANTED** in part and **DENIED** in part. Specifically, the following portion of the expert report is **STRICKEN**:

> This examinee's current diagnoses are within all reasonable medical probability a direct result from the right ankle surgery that occurred on 02-06-15, for which extended immobility was recommended without prophylaxis for [deep vein thrombosis] DVT in a [sic] examinee whose risk for DVT was present secondary to the procedure performed, the extended recommended immobility of 8 weeks and the examinee's pre-existing obesity.

(Docket No. 22-2 at 6). The remaining portions of the expert report are **ADMITTED**.

Moreover, Dr. Murati is barred from testifying as to the standard of care and negligence allegedly incurred by VA Hospital. Dr. Murati may provide testify regarding the remaining portions of the report, including his medical evaluation of Mr. Clemente and Mr. Clemente's degree of impairment.

**IT IS SO ORDERED.**

In San Juan Puerto Rico, this 14th day of February 2020.

S/ RAÚL M. ARIAS-MARXUACH
United States District Judge